# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

Plaintiff,

v.                                                    No. **CR 08-367 MCA**

**SASO KIROVSKI**,

Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on (1) the *United States' Notice of Intention to Offer Expert Testimony* [Doc. 67] filed on December 22, 2008; (2) *Defendant's Motion in Limine to Exclude Opinion Evidence of Officers to Question of Fact* [Doc. 68] filed on December 29, 2008; (3) the *United States' Motion in Limine to Introduce Evidence Pursuant to Federal Rules of Evidence 803(6) and 404(b)* [Doc. 73] filed on December 29, 2008; (4) the *United States' Motion in Limine for Pretrial Ruling Excluding Hearsay Statements Made by the* Defendant [Doc. 70] filed on December 29, 2008; (5) the *United States' Motion in Limine to Voir Dire Defense Witnesses Outside the Presence of the Jury* [Doc. 71] filed on December 29, 2008; (6) *Defendant's Motion in Limine to Exclude Prior Criminal Charge* [Doc. 72] filed on December 29, 2008; and (7) the Government's *Notice of Intention to Introduce Evidence Pursuant to Federal Rules of Evidence 803(6) and 902(11)* [Doc. 91] filed on January 6, 2009.  The Court heard proffers and arguments from counsel regarding

these motions at the Call of the Calendar on January 8, 2009.  Having reviewed the parties'

submissions, the relevant law, and being fully advised in the premises, the Court grants in

part and denies in part *Defendant's Motion in Limine to Exclude Opinion Evidence of

Officers to Question of Fact* [Doc. 68], grants the *United States' Motion in Limine to

Introduce Evidence Pursuant to Federal Rules of Evidence 803(6) and 404(b)* [Doc. 73],

grants in part in denies in part the *United States' Motion in Limine for Pretrial Ruling

Excluding Hearsay Statements Made by the* Defendant [Doc. 70], denies as moot the *United

States' Motion in Limine to Voir Dire Defense Witnesses Outside the Presence of the Jury*

[Doc. 71], grants *Defendant's Motion in Limine to Exclude Prior Criminal Charge* [Doc. 72],

and sustains Defendant's objection to the declaration attached to the Government's *Notice

of Intention to Introduce Evidence Pursuant to Federal Rules of Evidence 803(6) and

902(11)* [Doc. 91] for the reasons set forth below.

> **A.** **The *United States' Notice of Intention to Offer Expert Testimony* [Doc. 67]
> and *Defendant's Motion in Limine to Exclude Opinion Evidence of Officers
> to Question of Fact* [Doc. 68].**

On December 22, 2008, the Government filed a notice of its intent to offer the

following expert testimony:  (1) forensic chemist Jay Hopenwasser regarding the result of

the chemical testing of the seized marijuana; (2) Drug Enforcement Administration (DEA)

Special Agent Gregory Strothman regarding the estimated monetary value of the seized

marijuana in Arizona, New Mexico, and Michigan; whether it is a distributable amount; and

the extent to which Phoenix, Arizona is a source area for marijuana distribution; and (3)

Officer James Smid regarding the standard practices and procedures of commercial trucking

(such as use of log books and bills of lading) as well as the estimated cost of hauling a

commercial load from Arizona to Michigan.

In response to the Government's notice, Defendant has not filed timely objections to the proposed testimony of the forensic chemist or the DEA Special Agent.  Based on the materials submitted with the Government's *Notice* [Doc. 67] and *Exhibit List* [Doc. 98, Ex. 2, 3, 4], the Court finds that these witnesses are qualified to offer relevant and reliable testimony for purposes of conducting the gatekeeping inquiry required under <u>Daubert</u> and its progeny.  The Court also notes that the parties have submitted a stipulation [Ex. 5 ] which obviates the need for live testimony from the forensic chemist.

In his motion in limine, however, Defendant objects to the admission at trial of certain statements that Officer James Smid made during his prior testimony at the suppression hearing on the grounds that such statements constitute opinions about the Defendant's credibility or mental state.  [Doc. 68.]  Counsel for the Government concedes that opinions about a Defendant's mental state are inadmissible under Fed. R. Evid. 704(b) but denies that Officer Smid's testimony will be offered for that purpose at trial.  [Doc. 84.]

The Court agrees that the credibility of witnesses or a defendant's mental state is not a proper topic for an expert's trial testimony.  Expert witnesses may not usurp the jury's factfinding role in determining which version of events is more credible, <u>see</u> <u>United States v. Adams</u>, 271 F.3d 1236, 1245-46 (10th Cir. 2001), nor may such witnesses usurp the Court's role in instructing the jury on the applicable law, <u>see</u> <u>Specht v. Jensen</u>, 853 F.2d 805, 807-09 (10th Cir. 1988).  None of the Government's experts are permitted to expressly state the final conclusion or inference "as to whether the [D]efendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense

thereto." Fed. R. Evid. 704(b); United States v. Richard, 969 F.2d 849, 852 (10th Cir. 1992). Accordingly, Officer Smid and the Government's other witnesses will be precluded from expressing an ultimate opinion about whether the Defendant knew of the presence of a controlled substance in the tractor-trailer rig at issue in this case, and whether any statements or testimony attributed to the Defendant or any other witness are credible or believable.

But the Court's ruling on this issue "does not prevent the expert from testifying to facts or opinions from which *the jury* could conclude or infer the defendant had the requisite mental state," Richard, 969 F.2d at 852-53 (emphasis added), so long as the expert does "not go outside his [or her] specialized knowledge by opining about Defendant's actual intent." United States v. Muldrow, 19 F.3d 1332, 1338 (10th Cir. 1994). As a fact witness, Officer Smid may certainly describe what he directly observed or heard, or the way Defendant appeared to him, during the incident that led to the seizure of the marijuana, so long as he leaves it for the jurors to decide what inferences they should draw from such perceptions or appearances.

The Court also takes judicial notice that Officer Smid has been involved in numerous seizures of controlled substances and has permitted to testify as an expert on a variety of commercial trucking practices and procedures in other cases. See, e.g., United States v. Nick, No. 08cr52 MCA, Doc. 103 (D.N.M. unpublished memorandum opinion and order filed July 9, 2008); United States v. Michael, No. CR 06-1833 MCA, Doc. 119 (D.N.M. unpublished memorandum opinion and order filed Nov. 15, 2007); United States v. Webb, No. CR 05-176 WJ (D.N.M. judgment entered  May 2, 2007), United States v. Davis, No. CR 04-1211 WJ, Doc. 114 (D.N.M. Oct. 29, 2004) (unpublished memorandum opinion and

order denying motion to suppress); United States v. Byrdsong, No. CR 04-1465 JCH, Doc. 21 (D.N.M. Sept. 8, 2004) (exhibits consisting of Officer Smid's certification documents tendered for suppression hearing); id. Doc. 27 (D.N.M. filed Oct. 22, 2004) (unpublished memorandum opinion and order denying motion to suppress).  Thus, I find that Officer Smid's training and experience, as a whole, sufficiently qualifies him to provide relevant and reliable expert testimony as to specific practices and procedures of the commercial trucking industry, such as the use of logbooks and bills of lading to document a driver's use of his time and his handling of a load, as well as the common features of a tractor-trailer rig and how it is typically loaded with cargo.  I also find that so long as he does not offer an ultimate opinion about the commercial viability of Defendant's trucking business (which would require additional foundation and the expertise of an economist), Officer Smid is qualified to testify about the estimated cost of hauling a load from Arizona to Michigan in January 2008, taking into account factors such as the distance and route of travel, fuel prices, miles per gallon, and maintenance issues.

All of these areas present discrete topics about which Officer Smid can provide "brief, crisp answers to the Government's questions" in order to explain the meanings of particular items of physical evidence that are "beyond the ken of the average juror."  United States v. Tapia-Ortiz, 23 F.3d 738, 740-41 (2d Cir. 1994); see United States v. Robinson, 978 F.2d 1554, 1564 (10th Cir. 1992).  Officer Smid has a reliable basis for opining about these topics because they follow a simple, well-established pattern of inductive reasoning from his many personal observations of commercial-trucking practices both as a driver and more particularly as an inspector or law enforcement officer.  These topics are also relevant to the

charges in this case because they concern factors which the jury may wish to consider in deciding whether Defendant knew that he was transporting a large quantity of a controlled substance as alleged in the *Indictment*.

To the extent that the Defendant wishes the jury to draw contrary inferences from other admissible testimony which provides an innocent explanation for his activities, he is free to make that argument.  See United States v. Hubbard, 61 F.3d 1261, 1275 (7th Cir. 1995).  As with any expert opinion, Officer Smid's testimony is not binding, and the jury will be provided with a stock instruction reminding them that they may disregard an expert opinion entirely if they should decide that it is not based upon sufficient education and experience, or if they should conclude that the reasons given in support of the opinion are not sound, or that the opinion is outweighed by other evidence.  See id.

At the Call of the Calendar, Defendant's counsel raised an additional concern that the Government's experts would state an opinion that Defendant's activities fit the "profile" of a drug-courier or would attempt to link him in some way to a drug-trafficking organization or conspiracy.  I do not construe the Government's proffer as suggesting that any such opinions would be offered or implied by any of the Government's witnesses.  Nevertheless, I will caution the Government that the function of expert testimony in this trial is not to serve as a mere pretext for "'bolster[ing] the credibility of the government's fact-witnesses by mirroring their version of events'" in a narrative statement that stresses "the similarities between the [fact] witnesses' version of events and the expert's description of typical drug transactions." Tapia-Ortiz, 23 F.3d at 740 (quoting United States v. Cruz, 981 F.2d 659, 664 (2d Cir. 1992)); see United States v. Robinson, 978 F.2d 1554, 1563-64 (10th Cir. 1992)

6

(discussing the use of "profile evidence").

Similarly, an expert's articulation of the *basis of knowledge* for his or her opinion (namely, past experiences with drug seizures or narcotics investigations) must be careful not to state an inference or insinuation that the Defendant in this case is affiliated with a particular narcotics trafficking organization that the expert has encountered in the past. While gang-affiliation evidence may be relevant when there is a charge involving a conspiracy, agreement, or other transaction with a second defendant or criminal enterprise, see, e.g., Robinson, 978 F.2d at 1563-65, no such charge is at issue here, and the Government has not shown a relevant and reliable basis for attempting to associate the Defendant in this case with a notorious street gang or criminal organization such as those mentioned in Robinson. Such an attempt would be unfairly prejudicial under Fed. R. Evid. 403, and the Court will not permit it. See United States v. Pineda-Torres, 287 F.3d 860, 864-65 (9th Cir. 2002) (distinguishing "'unknowing drug courier' *modus operandi* testimony," which is admissible, from "testimony of the structure of drug trafficking organizations," which is not admissible because of its implication "that the defendant was a member of an international drug organization").

At the Call of the Calendar, the Court discussed with counsel the potential need to clarify the above rulings in a manner dependent on the context presented at trial. In particular, I advised counsel of the need to alert the Court and, if necessary, request a bench conference outside the jury's presence if they believe that a particular line of questioning is going to elicit testimony that exceeds the parameters set forth in the Court's pretrial rulings. I also directed counsel, Defendant, and Officer Smid to be present at 8:00 a.m. on the

morning of trial in order to address any last-minute objections to Officer Smid's proposed testimony and make him available for voir dire outside the jury's presence, if needed. The Court's pretrial rulings on this issue are subject to reconsideration if unforeseen circumstances or a change in context should arise as a result of such procedures.

**B.**   **The *United States' Motion in Limine to Introduce Evidence Pursuant to Federal Rules of Evidence 803(6) and 404(b)* [Doc. 73]**

I next turn to the Government's motion in limine concerning the admissibility of one of the logbooks seized from Defendant's trailer, which has entries purportedly dating from November 7, 2007, to January 30, 2008. [Doc. 73; Ex. 6.] In their written response to this motion, Defendant's counsel admitted "that the log books fit into the ambit of of Rule 803(6) as a business record," but asserted that they are irrelevant and unfairly prejudicial. [Doc. 90, at ¶ 6.] At the Call of the Calendar, Defendant's counsel changed their position and raised an entirely new objection that the Government could not lay a proper foundation for admitting the logbook entries as business records under Rule 803(6) because Defendant, as the author of the log books, would be the only person qualified to lay such foundation, and obviously the Government is not entitled to call him as a witness.

As I noted at the Call of the Calendar, a foundation for admitting the log books as business records under Fed. R. Evid. 803(6) is unnecessary if, as Defendant's counsel represented at the Call of the Calendar, Defendant himself is the one who made and kept the logbook entries in question; for in that instance, the logbook entries are admissions by a party opponent under Fed. R. Evid. 801(d)(2) and are not subject to the hearsay rule. Proceeding under Fed. R. Evid. 801(d)(2), the Government may instead lay the foundation for admitting

the logbook identified as Government's Exhibit 6 through testimony that:  (1) Defendant presented the staff at the Gallup Port of Entry with this exhibit; (2) Defendant represented to the staff at the Gallup Port of Entry that this exhibit was his logbook; and (3) each page of the logbook contains a certification signed by "Saso Kirovski" that "these entries are true and correct."[1]  [Ex. 6.]  See generally Edward J. Imwinkelried, Evidentiary Foundations § 10.03, at 419-37 (6th ed. 2005).

Turning to Defendant's objections to the *relevance* of the logbook in question, I find that the entries for January 28, 2008, through January 30, 2008, constitute *res gestae* evidence because they cover the period from when Defendant went to pick up a load of furniture in Tolleson, Arizona until the time of the search and seizure at the Gallup Port of Entry which provides the basis for the *Indictment* in this case.  Defendant's own business records or admissions documenting his activities during this period would be relevant and admissible for purposes of assisting the jury in determining how the load of marijuana got into Defendant's trailer and whether he knew that he was carrying a load of contraband in his trailer at the time he was stopped at the Gallup Port of Entry on or about January 30, 2008.  For example, Defendant's reporting his off-duty or sleeper-berth status for several hours around the time he picked up the load of furniture in Arizona, as well as the absence of an entry for a bill of lading or shipping documents during that period, provides circumstantial evidence to support the inference that Defendant had time to add the marijuana to his trailer at a separate location after the furniture was loaded.  Such a window

---

[1]As requested in the parties' proposed jury instructions, the Court will also instruct the jury to consider the voluntariness of any statements that the officers attribute to Defendant.

of opportunity to add the marijuana to the load of furniture in his trailer also may serve to rebut the inference that Defendant became an unknowing carrier of marijuana through some mistake or accident (such as a failure to notice the marijuana being secreted in the trailer while the furniture was being loaded).

With respect to the larger time frame covered in the logbook as a whole, the activities reported on the entries identified as Government's Exhibit 6 may be viewed as "prior acts" subject to Fed. R. Evid. 404(b).  Under that rule, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."   Such evidence may be admitted, however, to establish motive, intent, knowledge, preparation, plan, identity, and absence of mistake or accident.  See id.; United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000); United States v. Johnson, 42 F.3d 1312, 1315 (10th Cir. 1994).

To determine whether evidence is admissible for one of the purposes stated above, the Court applies the four-part test articulated by the Supreme Court in Huddleston v. United States, 485 U.S. 681, 691-92 (1988).  This test requires that:

> (1) the evidence must be offered for a proper purpose;  (2) the evidence must be relevant;  (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice;  and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

Zamora, 222 F.3d at 762 (quoting United States v. Roberts, 185 F.3d 1125, 1141 (10th Cir.1999)).

In this case, the entries in the logbook identified as Government's Exhibit 6 are

relevant and admissible under Fed. R. Evid. 404(b) because they may assist the jury in determining whether Defendant was operating his commercial-trucking business in an efficient manner for legitimate purposes, or whether he instead was using that business as a front for a covert drug-smuggling operation.  Such evidence is offered for a proper purpose under Fed. R. Evid. 404(b), because evidence of an unusual amount of "down time" during the weeks and days leading up to the seizure may support an inference that Defendant was not operating his commercial trucking business in an efficient manner during that time and therefore had a financial motive to turn to the more lucrative business of transporting contraband.  In addition, the logbook entries for this period may provide evidence of a plan to conceal or dissimulate Defendant's status as a marijuana transporter by listing an "off duty" or "sleeper berth" status to cover the time that he was not engaged in legitimate business activity.

On the other hand, there is nothing wrong or criminal *per se* about recording one's "off duty" status in a logbook that would unduly raise the danger of unfair prejudice from this type of evidence.  Indeed, there may be an innocent explanation for recording "off duty" status in a logbook, for such an entry could merely reflect that the driver was using another vehicle or was engaged in some other legitimate business activity during the period in question.

Nevertheless, Defendant contends that testimony from the Government's witnesses concerning the logbook entries in question would be speculative and would merely serve as a springboard for offering an opinion about Defendant's state of mind or the commercial viability of his trucking business.  Such concerns, however, are already addressed in the

Court's prior ruling which limits the scope of the Government's witness' testimony.  As noted above, the Court has determined that Officer Smid is qualified to testify about the meaning of the logbook entries as they relate to the common practices of the commercial-trucking industry, but he may not offer an opinion about the ultimate issues of whether Defendant knew that a controlled substance was in his trailer or whether Defendant's trucking business was commercially viable.

With these limits in place, I determine that the probative value of the logbook entries identified as Government's Exhibit 6 is not substantially outweighed by the danger of unfair prejudice or other considerations under Fed. R. Evid. 403.  I will also offer a limiting instruction adapted from Tenth Circuit Criminal Pattern Jury Instruction No. 1.30 (Feb. 2006), to advise the jury of the limited purposes for which evidence of the logbook entries are being offered and to mitigate the potential for unfair prejudice or juror confusion occasioned by the admission of such evidence.  Defendant may, of course, offer admissible evidence to support an innocent explanation for the logbook entries in question, or to call into question their accuracy or completeness.

The Court's ruling on this issue is subject to reconsideration if unforeseen circumstances or a change in context should arise during the trial.  Therefore, counsel must advise both the Court and opposing counsel if and when he is ready to introduce this topic to the jury so that Defendant has the opportunity to renew his objection and the Court has the opportunity to provide a timely limiting instruction.  With these conditions imposed, the Government's motion in limine regarding the logbook entries identified as Government's Exhibit 6 is granted.

## C.    The *United States' Motion in Limine for Pretrial Ruling Excluding Hearsay Statements Made by the* Defendant [Doc. 70].

The Court next addresses the Government's motion to preclude defense counsel from eliciting testimony at trial concerning out-of-court statements attributed to Defendant by law enforcement officers.  [Doc. 70.]  The resolution of this issue depends in part on whether the Government is going to elicit from its witnesses any portion of Defendant's out-of-court statements that were made before he was arrested and given Miranda warnings, and whether Defendant subsequently invoked, or now intends to invoke, his right to remain silent.

While Defendant's prior testimony during the suppression hearing is not admissible as part of the Government's case-in-chief under Simmons v. United States, 390 U.S. 377, 394 (1968), it is likely that the Government will need to elicit at least some portion of Defendant's pre-arrest statements through a law-enforcement witness at trial in order to explain the sequence of events during the search and seizure at the Gallup port of entry.  If a portion of such pre-arrest statements are admitted through a government witness during its case-in-chief, then the rule of completeness permits Defendant's counsel to cross-examine such a witness about admissions he or she attributed to Defendant on direct examination in order to show the context in which those admissions were made and thereby prevent unfair distortion or the exclusion of substantially exculpatory information.  See Fox v. Ward, 200 F.3d 1286, 1293 (10th Cir. 2000) (collecting cases).  Context matters here because it serves to "make the interrogation and presentation effective for the ascertainment of the truth."  Fed. R. Evid. 611(a); see United States v. Mussaleen, 35 F.3d 692, 696 (2d Cir. 1994).  Defendant may therefore elicit "those portions [of his statements] which are 'relevant to an issue in the

13

case' and necessary 'to clarify or explain the portion already received'" on direct examination of the Government's witnesses.  United States v. Zamudio, 141 F.3d 1186, 1998 WL 166600, at *6 (10th Cir. 1998) (unpublished disposition quoting United States v. Haddad, 10 F.3d 1252, 1259 (7th Cir. 1993)).

The rule of completeness, however, does not necessarily extend to statements made to a different law-enforcement officer on a different occasion (such as post-arrest statements to the DEA case agent).  While Fed. R. Evid. 801(d)(2) generally allows the Government to elicit testimony about out-of-court statements attributed to Defendant because they are admissions by a party opponent, this rule does not apply to a party's attempt to elicit *his own* out-of-court statements through another witness, at least when the statements are offered for the truth of the matter asserted.  See Fed. R. Evid. 801(c).  Additional complications may arise in the context of statements made during custodial interrogation because of the rule barring prosecutors from commenting or eliciting testimony about a defendant's invocation of his constitutional right to remain silent or obtain the advice of counsel.  See generally United States v. Nelson, 450 F.3d 1201, 1212 (10th Cir. 2006).

It is the Defendant's prerogative, however, to elicit testimony that he waived his rights and elected to speak with, or provide statements to, an agent after his arrest.  The mere verbal act of making a statement, apart from its content, does not implicate the hearsay rule because the act itself is not being offered for the truth of the matter asserted.  See generally Echo Acceptance Corp. v. Household Retail Servs., Inc., 267 F.3d 1068, 1087 (10th Cir. 2001).  Further, the verbal act of making a statement may be relevant to a defense insofar as bears on the level of cooperation or candor the Defendant displayed to the agent, which may in turn

14

serve as circumstantial evidence from which inferences may be drawn as to the state of his knowledge of the trailer's cargo. And if Defendant elects to testify at trial, then of course the hearsay rule does not prohibit him from testifying about any prior statements he made to law-enforcement officers, even if offered to prove the truth of the matter asserted.

In the alternative, Defendant asserts that he may elicit his out-of-court statements through the Government's witnesses under the residual exception to the hearsay rule set forth in Fed. R. Evid. 807. The residual exception applies to statements that are not specifically covered by other hearsay exceptions in Fed. R. Evid. 803 or 804 but have "equivalent circumstantial guarantees of trustworthiness." Fed. R. Evid. 807. To be admissible under the residual exception, the Court must determine that "(A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence." Id. In addition, the proponent of the statement is required to provide advance notice of his or her "intention to offer the statement and the particulars of it, including the name and address of the declarant." Id.

While Defendant's out-of-court statements may provide evidence of a material fact (namely whether Defendant knew about the load of contraband in his trailer), I find that the other requirements of the residual exception are not satisfied here. Defendant did not provide timely notice of the *particular* out-of-court statement(s) he intends to elicit from a government witness under this exception. Instead, the first notice of such an intent appears in Defendant's response to the Government's motion in limine, which only alludes to such

statements in a general manner, with no citation to legal authority other than the rule itself. Further, while the Government cannot call the Defendant as a witness, and the Defendant has a right not to testify, for purposes of the residual exception Defendant has the opportunity to procure a more probative form of evidence on this point--namely his own trial testimony-- which would have greater circumstantial guarantees of trustworthiness because it would be under oath and subject to cross-examination.  The Defendant is hardly a disinterested witness whose trustworthiness would be self-evident under circumstances where only self-serving, out-of-court statements are offered.  To allow him to circumvent the usual requirements of sworn testimony subject to cross-examination by selectively introducing his unsworn, self-serving out-of-court statements through the testimony of a government witness would be directly contrary to the general purposes of the hearsay rules and would not serve the interest of justice under these circumstances.  See United States v. Trujillo, 136 F.3d 1388, 1395-96 (10th Cir. 1998); United States v. Hughes, 535 F.3d 880, 882-83 (8th Cir. 2008).  Therefore, the residual exception to the hearsay rule does not provide an alternative avenue by which Defendant can have his statements admitted without testifying at trial.

In the absence of Defendant's own trial testimony or the invocation of the rule of completeness in response to statements elicited on direct examination during the Government's case-in-chief, I am not persuaded at this juncture that the Rules of Evidence permit Defendant to elicit any of his out-of-court statements from government witnesses if they are offered for the truth of the matter asserted.  Depending on the context in which the issue arises during trial, however, I will defer ruling on whether Defendant can show another hearsay exception, or a non-hearsay purpose, under which some reference to such statements

16

could be admitted at trial.  With these caveats and conditions, the Government's motion in limine regarding Defendant's out-of-court statements is granted in part and denied in part.

### D.     The *United States' Motion in Limine to Voir Dire Defense Witnesses Outside the Presence of the Jury* [Doc. 71]

The Government seeks permission to voir dire each of the defense witnesses (other than Defendant) outside the jury's presence before they are allowed to testify at trial.  [Doc. 71.] Fed. R. Evid. 104(c) allows for such a procedure "when the interests of justice require." This procedure may be invoked when there is a need for the Court to make preliminary rulings on the admissibility of the defense witness' testimony, or to provide the Government with a fair opportunity to seek such preliminary rulings.  Thus, the Government and the Court generally are entitled to such advance notice of the anticipated content and purpose of the defense witness' trial testimony as is required for the Court to make timely and informed rulings on the preliminary questions of admissibility mentioned in Fed. R. Evid. 104 (*e.g.*, the qualification of a person to serve as an expert witness or the existence of a privilege, including the witness' privilege against self-incrimination).  For example, the Government may request disclosure of the "written summary" regarding the Defendant's experts specified in Fed. R. Crim. P. 16(b)(1)(C), and the timely disclosure of such information can be a necessary first step for the Court to fulfill its gatekeeping role under Daubert and its progeny. See United States v. Nacchio, 519 F.3d 1140, 1150-53 (10th Cir.), reh'g en banc granted, 535 F.3d 1165 (10th Cir. 2008).

In this instance, Defendant's counsel stated for the first time at the conclusion of the Call of the Calendar that he may call at least one truck-driver witness as an expert.  He then

filed a *Response to Oral Objection of United States Regarding Defense Use of Truck Driver Testimony as Expert Testimony* [Doc. 104], in which he asserts that the Government already received timely notice of the proposed testimony of "Dean Kiroski" regarding "down time in the logbooks and whether this was consistent with practices in the trucking industry." In response to both the Government's oral objection at the Call of the Calendar and the earlier motion in limine, Defendant also indicates that he has voluntarily consented to allow the Government's counsel to voir dire the "the truck driver witnesses identified by the Defendant in his witness list" outside the jury's presence. [Doc. 88.]

Under these circumstances, I find it unnecessary to compel the requested voir dire from the defense witnesses in question because Defendant has already given his voluntary consent to such a procedure. The Government's motion in limine to voir dire defense witnesses is therefore denied as moot.

To the extent that any additional pretrial disclosure of the proposed defense witness' qualifications as an expert is necessary, I further find that requesting a proffer from Defendant's counsel provides the best avenue for addressing such concerns. See generally 4 Wayne R. LaFave *et al.*, Criminal Procedure § 20.4(b), at 890-98 (2d ed. 1999). Accordingly, in advance of the requested voir dire, Defendant's counsel should be prepared to provide the Court with a proffer outside the jury's presence that summarizes the proposed expert witness's opinions, the bases and reasons for those opinions, and the witness's qualifications. Such a proffer will better enable the Court to assess the extent to which the witness is truly being offered as an expert witness rather than, or in addition to, a fact witness. See, e.g., United States v. Caballero, 277 F.3d 1235, 1247 (10th Cir. 2002) (noting

18

that  rules applying to expert opinions may not apply to witnesses who simply provide statements of fact regarding relevant, readily understandable procedures or operations they had witnessed during their respective careers).  Such an assessment, in turn, will better enable the Court to estimate and schedule the time needed to voir dire defense witnesses without unduly delaying the trial or wasting the jury's time.  As with all pretrial rulings on motions in limine, my findings regarding the need to voir dire defense witnesses are subject to reconsideration in the event that unforeseen circumstances or a change in context were to arise during the trial.

### E.    *Defendant's Motion in Limine to Exclude Prior Criminal Charge* **[Doc. 72]**

Defendant moves to exclude evidence that he was charged with three counts of "Criminal Sexual Conduct in the 1st Degree--Accomplices" in Wayne County, Michigan in September 1999.  Defendant's motion correctly points out that such evidence is inadmissible under Fed. R. Evid. 609 because the charges were dismissed and therefore did not result in a conviction.  In addition, these prior charges are almost ten years old, and the Government does not contend that they have any relationship or relevance to the charge at issue in the present case.  Under these circumstances, the Court agrees that the unfair prejudice caused by the admission of evidence concerning the prior charges in question would substantially outweigh its probative value, if any.  Therefore, Defendant's motion in limine to exclude evidence of the prior charges is granted.

### F.    **The Government's** *Notice of Intention to Introduce Evidence Pursuant to Federal Rules of Evidence 803(6) and 902(11)* **[Doc. 91]**

On the evening of January 6, 2009, the Government filed a notice advising the Court

of its intention to offer the *Declaration of Joshua Birdwell Pursuant to Federal Rules of Evidence 803(6) and 902(11)* [Ex. 1 to Doc. 91-2] in place of the live testimony from a records custodian that would otherwise be offered to authenticate and lay the foundation for admitting the fuel receipts marked as Governments Exhibits 18A and 18B.  At the Call of the Calendar, the Government submitted legal authority in support of using declarations in lieu of live testimony for this purpose.  See United States v. Adefehinti, 510 F.3d 319, 324-26 (D.C. Cir. 2008); United States v. Plum, 558 F.2d 568, 572 (10th Cir. 1977).  The Court also noted a prior case in which certain IRS records were found to meet the technical requirements for admission under Fed. R. Evid. 803(6) and 902(11) without violating the Confrontation Clause.  See United States v. Michael, No. 06cr1833 MCA, supra, Doc.  120, at 10 (citing United States v. Feliz, 467 F.3d 227, 233-34 (2d Cir. 2006); United States v. Ellis, 460 F.3d 920, 926-27 (7th Cir. 2006); United States v. Baker, 458 F.3d 513, 519 (6th Cir. 2006); and United States v. Bryant, No. 3:04-CR-00047-01, 2006 WL 1700107, at *3 (W.D. Va. June 15, 2006)).

In responding to the Government's notice regarding the proposed use of Mr. Birdwell's *Declaration* for the purpose stated above, Defendant's counsel have equivocated as to whether their objections are based on the relevance of the fuel receipts, a lack of foundation, and/or a defect in meeting the technical requirements of the rules in question. Based on the legal authorities cited above, I conclude that neither the Confrontation Clause nor the technical requirements of Fed. R. Evid. 803(6) and 902(11) provide a bar to the admission of a declaration in lieu of live testimony under these circumstances.

With respect to the relevance objection, I find that the fuel receipts in question are

relevant for the purposes previously identified in the above discussion of Defendant's logbook entries, namely to document the timing and location of Defendant's path of travel between the time he picked up the load of furniture in Arizona and the time he arrived at the Gallup Port of Entry.  To the extent there are discrepancies between the time and location indicated on the fuel receipts and those indicated on the logbook entries, I also find that such discrepancies would be relevant to the question whether Defendant's logbook entries evince a plan to conceal or dissimulate his activities during the period in question, so as not to reveal the time or location when the marijuana was added to the load of furniture.

I nevertheless determine that the declaration in the form presented with the Government's *Notice of Intention to Introduce Evidence Pursuant to Federal Rules of Evidence 803(6) and 902(11)* [Doc. 91] does not provide a sufficient foundation for admitting some of the statements contained therein without live testimony.  In particular, I note that this declaration does not simply state that the fuel receipts in question are authentic business records kept in the course of regularly conducted activities.  Rather, the declaration also appears to attest to the accuracy or truth of the contents of the fuel receipts, namely that someone named "S. Kirovski" made a purchase in Avondale, Arizona at 3:37 p.m. (PST) on January 29, 2008.

If the declarant is going to testify, based on the fuel receipt, that Defendant (or someone using his identity) actually made a certain transaction in Avondale, Arizona at that date and time, then additional foundation is needed to support such testimony.  For example, the Court notes that the fuel receipts [Ex. 18A and 18B] appear in the form of printouts which suggest that they are generated by some form of automated system (rather than a store

clerk manually typing the information).  The requirements for authenticating such computer records are more extensive than those applicable to simple handwritten documents, for there must be some basis for concluding that the computer was operating properly when it generated the records in question (particularly with respect to the function of printing the correct date and time).  <u>See generally</u> Edward J. Imwinkelried, <u>Evidentiary Foundations</u> § 4.03[2], at 58-64 (6th ed. 2005).

As the conclusory declaration submitted with the Government's notice does not meet these requirements, it will not suffice to lay the foundation for admitting the fuel receipts marked as Defendant's Exhibits 18A and 18B.  I will therefore require the Government to present live testimony for this purpose from a records custodian with the appropriate knowledge.

### G.    **CONCLUSION**

For the foregoing reasons, the Court determines that (1) the opinion testimony proffered by the Government is admissible provided that it does not exceed the limits set forth above; (2) the logbook entries for the period of time leading up to the search and seizure at the Gallup Port of Entry on or about January 30, 2008, are admissible under Fed. R. Evid. 404(b) and as *res gestae* evidence; (3) Defendant may not elicit his own hearsay statements through a government witness absent a showing that such statements are admissible under the rule of completeness or for a non-hearsay purpose; (4) the Government's motion to compel defense witnesses to submit to voir dire outside the jury's presence is moot insofar as Defendant has consented to such voir dire; (5) evidence of the prior criminal charges against Defendant dating from 1999 are not admissible at trial; and (6)

22

the declaration of Joshua D. Birdwell submitted by the Government is not legally sufficient to substitute for live testimony for the purpose of laying the foundation for admitting the fuel receipts marked as Government's Exhibits 18A and 18B.   All of the Court's pretrial rulings on the admissibility of evidence remain subject to reconsideration in the event that unforeseen circumstances or a change in context arises during the trial.

**IT IS THEREFORE ORDERED** that:

1.    *Defendant's Motion in Limine to Exclude Opinion Evidence of Officers to Question of Fact* [Doc. 68] is **GRANTED IN PART** and **DENIED IN PART**;

2.    the *United States' Motion in Limine to Introduce Evidence Pursuant to Federal Rules of Evidence 803(6) and 404(b)* [Doc. 73] is **GRANTED** under the conditions set forth above;

3.    the *United States' Motion in Limine for Pretrial Ruling Excluding Hearsay Statements Made by the* Defendant [Doc. 70] is **GRANTED IN PART** and **DENIED IN PART**;

4.    the *United States' Motion in Limine to Voir Dire Defense Witnesses Outside the Presence of the Jury* [Doc. 71] is **DENIED AS MOOT**;

5.    *Defendant's Motion in Limine to Exclude Prior Criminal Charge* [Doc. 72] is **GRANTED**; and

6.    Defendant's objection to the declaration of Joshua Birdwell attached to the Government's *Notice of Intention to Introduce Evidence Pursuant to Federal Rules of Evidence 803(6) and 902(11)* [Doc. 91] is **SUSTAINED**.

**SO ORDERED** this 9th day of January, 2009, in Albuquerque, New Mexico.

_____

**M. CHRISTINA ARMIJO**
UNITED STATES DISTRICT JUDGE